# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **PINN, INC.,**<br><br>        Plaintiff<br><br>    v.<br><br>**NOTHING TECHNOLOGY LTD.,**<br><br>        Defendant | **Case No.  6:23-cv-644**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Pinn, Inc. files this Complaint against Nothing Technology Ltd., who markets, imports, sells, and distributes wireless earbud systems that practice one or more claims of U.S. Patent No. 10,455,066 (the "'066 Patent"), which is owned by Pinn, Inc.

## THE PARTIES

1.      Pinn, Inc. is a California Corporation with its headquarters and principal place of business at 2522 Chambers Rd., Suite 100, Tustin, California 92782.

2.      On information and belief, Defendant Nothing Technology Ltd. ("Nothing") is a corporation organized under English Law with its principal place of business located at 32-38 Saffron Hill, Clerkenwell, England EC1N 8FH, GB.

3.      Nothing was founded in the United Kingdom in 2020 and does business

in the States of Texas and in the Western District of Texas.

4.  Nothing offers for sale and sells the accused products to customers and potential customers in Texas, including in this judicial district.

## JURISDICTION AND VENUE

5.  This patent infringement suit is brought under the United States Patent Act, namely, 35 U.S.C. §§ 271, 281, and 284-285, among other laws.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b), because Nothing markets, sells, makes, tests, uses, and delivers accused products in this district, directs and instructs customers and end users on how to use the accused products in this district, and has committed acts of infringement in this district.

7.  Nothing offers for sale and sells products within the State of Texas and within the Western District of Texas that directly or indirectly infringe the Asserted Patent.  Nothing purposefully and voluntarily places its infringing products into the stream of commerce with both the expectation and the knowledge that those products will be purchased and used by consumers in the Western District of Texas.

8.  For example, while Nothing is a United Kingdom-based entity, it operates a United States-focused website (https://us.nothing.tech/), which includes website pages advertising the Accused Products.

9.  Venue is proper as to Nothing in this District under 28 U.S.C. § 1391(c), because Nothing is a foreign corporation.

## THE PINN PATENT

10.     Seung Jin Kim invented the subject matter claimed in the asserted '066 patent, which is owned by his company, Pinn, Inc., in California.

11.     The '066 patent discloses and claims, among other things, a personal wireless media station including a mobile base station and a wireless earbud.  The personal wireless media station may detect that the wireless earbud is docked to the base station, detect that the wireless earbud is undocked from the base station, and plays sound through the wireless earbud while the wireless earbud is undocked from the base station.

12.     Generally speaking, the Asserted Patent claims methods, apparatuses, and systems relating to a personal wireless media station having a wireless earbud and main body, wherein the wireless media station may detect when the wireless earbud is connected to the base station, detect when the wireless earbud is undocked from the base station, and cause sound to begin playing through the wireless earbud when the earbud is undocked from the base station.

13.     Pinn is the assignee of all right, title, and interest in and to the Asserted Patent and has the exclusive right to assert all causes of action arising under, or that may arise under, the Asserted Patent, including the right to pursue and recover any and all monetary and equitable remedies for infringement.

14.     Nothing has been on notice of the '066 Patent since at least as early as the date it received service of this complaint.

15.     Nothing has infringed and continues to infringe one or more claims of Pinn's '066 Patent.

## THE '066 PATENT: "MOBILE SYSTEM WITH WIRELESS EARBUD"

16.     On October 22, 2016, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 10,455,066, following a full examination of U.S. Pat. App. Ser. No. 15/563,937, which was filed on April 4, 2016.

17.     Claim 1 of the '066 Patent recites:

1.   An apparatus comprising:

a base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry; and

a wireless earbud configured for plugging into the connection hole of the base station to form an integrated body with the base station, wherein the system is capable of wirelessly pairing with a smartphone for the wireless earbud to receive audio data originated from the smartphone,

wherein, in response to pressing of the user input button, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone such that the wireless earbud receives audio data originated from the smartphone and

plays audio using the audio data from the smartphone,

wherein, in response to plugging the wireless earbud into the connection hole, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate charging of a battery of the wireless earbud,

wherein, when the wireless earbud is plugged into the connection hole of the base station, the wireless earbud is configured to electrically connect with the circuitry of the base station and further configured to performing wired data communication with the base station.

18.     Figures 1 and 2 illustrate certain exemplary uses of an embodiment of the '066 patent.



FIG. 1                                FIG. 2

19.     The technologies and innovations recited in the claims of the '066 Patent,

including Claim 1, provide inventive concepts and do not claim an abstract idea. The individual elements of the claims of the '066 Patent are not well-understood, routine, or conventional.  Instead, the claims of the '066 Patent are directed to unconventional, inventive concepts that implement technical solutions to solve various problems, including problems unique to wireless earbud pairing, and that enhance the operation and functionality of wireless earbuds and increase convenience for users.  As one example, the '066 Patent provides a technical solution that comprises the transferring of sound output from a main body speaker to an earbud when undocking has been detected.  *See, e.g.*, '066 Patent at 2:33-44.

20.     The technological solutions taught by the '066 Patent provide advantages over, and improvements to, the state of the art at the time. For example, the teachings of the '066 Patent describe a wireless base station and earbud that work seamlessly together to provide the consumer with functional wireless earbud capabilities.

21.     The inventions and the limitations recited in the claims of the '066 Patent, whether alone or in combination with other limitations, embody several inventive concepts.  For example, claim 1 of the '066 Patent describes a consumer product or system featuring distributed intelligence and that features an earbud that communicates wirelessly with a smartphone and communicates via wired two-way communication with the main body. The main body is configured to determine a docked-to-undocked change in which, when the earbud is undocked, the sound begins playing in the earbud.

*See, e.g.,* '066 Patent at 1:46-57.

## PINN, INC.

22.     Pinn was founded by Seung Jin ("Sean") Kim in 2015, with a vision toward designing and developing wearable technology that enhances the smartphone experience and eliminates frustrating phone problems like trying to locate and retrieve one's phone quickly to answer an incoming call.

23.     Sean Kim received a bachelor's degree in Music Composition and Orchestral Conduction from Seoul National University in 2003. In addition to being an accomplished composer, Mr. Kim is an entrepreneur and inventor.

24.     Recognizing the need for a personal media system with simplified operation and structure, Mr. Kim conceived of the Pinn device in 2014 and founded Pinn Inc. the following year to develop a first-generation wearable product that would provide consumers with an easier way to use their smartphones, by simplifying and enhancing the wireless capabilities and operation of the device. Mr. Kim recognized that a system having distributed intelligence and processing, along with an integrated modular design, would improve ease of use and functionality.

25.     The Patent Office recognized Mr. Kim's innovations by granting the first of his wireless earbud system patents in 2017.

26.     Pinn proved Mr. Kim's concept in October 2015 and launched the Pinn product soon after.  Pinn became available to the public in 2017.



27.     Pinn includes a wireless earbud that is docked and integrated into the Pinn

main body and wirelessly connects to a user's smartphone via Bluetooth.



## **THE NOTHING INFRINGING PRODUCTS**

28.     Recognizing the practical importance of Kim's groundbreaking invention,

Nothing Technology Ltd. introduced its own wireless earbuds.  These wireless earbuds

are comprised of a base station, earbuds, a connection hole, a user input button, and electrical circuitry designed to connect the earbuds to the base station, all of which form an integrated body capable of wirelessly pairing with a smartphone such that the wireless earbud can receive audio data originating from the smartphone.

29.     Nothing Technology Ltd. makes, has made, sells, and offers for sale in the United States and imports into the United States various versions of a wireless earbud system that practice the Pinn Patent in Suit: Ear (1), Ear (2), and Ear (Stick).

## Ear (1)

30.     The Ear (1) base station case houses the Nothing wireless earbuds.

Nothing Ear (1) Base Station



31.     Each wireless earbud plugs into a connection hole to form an integrated body. The integrated body is formed when the wireless earbuds are placed into their respective connection holes where they are magnetically secured.

Nothing Ear (1) Base Station Connection Hole



32.     In normal operation, the wireless earbuds of the Accused Products communicate with a smartphone via Bluetooth, receive audio data from the smartphone, and play audio using the audio data from the smartphone when paired wirelessly.

33.     The Accused Products feature an earbud connector for connecting with an electrical circuit of the main body for wired data communication.

34.     The main body of the Ear (1) comprises at least one processor and at least one memory.

Nothing Ear (1) Base Station
Circuitry and Memory



35.     The Ear (1) features a User Input Button on the case, sometimes referred

to as the "case button," designed to communicate with the buds and the base station. In response to the pressing of the User Input Button, "at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone such that the wireless earbud receives audio data that originated from the smartphone and plays the audio using the audio data from the smartphone." *See e.g.,* '066 Patent at 33:28-34.

Nothing Ear (1) Base Station User Input Button



36.     The User Input Button is used to initiate Bluetooth pairing and factory resets, indicating there is wired data communication occurring between the earbuds and the base station.

Nothing Ear (1) Bluetooth



To pair Ear (1) with most typical Bluetooth devices:
1) Ensure that your chosen device has Bluetooth on, and is
within 10 meters (33 feet) of Ear (1).
2) While Ear (1) is charging in the case, long press the
case button for 2 seconds.
3) Search for Ear (1) in your device's Bluetooth menu, and
connect.
You can also use the Nothing X app for guided connections.

On iOS devices, you will see two options on the Bluetooth
device list related to Ear (1): "Nothing Ear (1)" and
"Nothing X app". Please connect to "Nothing Ear (1)" for all
core earbud functions (i.e. audio, microphone, ANC).
The "Nothing X app" option is only for customising your
earbuds (e.g. EQ and gesture control settings) and must be
used in conjunction with the Nothing X app.



37.     The Ear (1) earbuds communicate with a smartphone via Bluetooth.

38.     Audio from a smartphone is played through the earbuds.

39.     The Ear (1) earbuds are configured to recognize when the earbuds are placed in the connection hole, where "at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate charging of a battery of the wireless earbud." *See e.g.,* '066 Patent 33:35-39.

Nothing Ear (1) Wireless Earbud Charging

## How do I charge Ear (1)?

To charge the Ear (1) earbuds, place the them in the
charging case and close the lid securely.

To charge the Ear (1) case, connect a USB-C cable to the
case and power source. You can also use a Qi-compatible
wireless charger.



40.    Once such connection occurs, charging of the battery in the wireless earbud begins via charging contacts and electrical circuitry located in the base station.

Nothing Ear (1) Charging Contacts



41.    Ear (1) earbuds are configured to perform wired two-way data communication with the charging case, as seen through factory resets and Bluetooth pairing.

Nothing Ear (1) Wireless Earbud Reset



How can I reset Ear (1)?

To reset Ear (1), place the earbuds into the case, close the lid and press the case button for 30 seconds.

42.     Ear (1) earbuds are *not* capable of wirelessly communicating with the mobile base station.

43.     Nothing sells Ear (1) with a mobile base station that includes a connection hole, a user input button, at least one processor, at least one memory, and circuitry. The Ear (1) system is designed and intended to be used by plugging the earbuds into connection holes of the base station for charging and for two-way wired data communication.

## Ear (2)

44.     The Ear (2) base station case houses the Nothing wireless earbuds.

Nothing Ear (2) Base Station



45.     Each wireless earbud plugs into a connection hole to form an integrated body. The integrated body is formed when the wireless earbuds are placed into their respective connection holes where they are magnetically secured.

| Nothing Ear (Stick) Base Station | Nothing Ear (Stick) Integrated Body |
| --- | --- |



46.     In normal operation, the wireless earbuds of the Accused Products communicate with a smartphone via Bluetooth, receive audio data from the smartphone, and play audio using the audio data from the smartphone when paired wirelessly.

47.     The Accused Products feature an earbud connector for connecting with an electrical circuit of the main body for wired data communication.

48.     The main body of the Ear (2) comprises at least one processor and at least one memory.

49.     The Ear (2) features a User Input Button on the case designed to communicate with the buds and the base station.  In response to the pressing of the

User Input Button, "at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone such that the wireless earbud receives audio data that originated from the smartphone and plays the audio using the audio data from the smartphone." *See e.g.,* '066 Patent at 33:28-34.

Nothing Ear (2) User Input Button



50.     The User Input Button is used to initiate Bluetooth pairing and factory resets, indicating there is wired data communication occurring between the earbuds and the base station.

51.     The Ear (2) earbuds communicate with a smartphone via Bluetooth.

52.     Audio from a smartphone is played through the earbuds.

53.     The Ear (2) earbuds are configured to recognize when the earbuds are placed in the connection hole, where "at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate charging of a battery of the wireless earbud." *See e.g.,* '066 Patent 33:35-39.

Nothing Ear (2) Charging



**Charge**
**Ear buds**
Put the buds in the charging case and close the case to charge.

**Ear case**
Close the case and connect the case to a power supply through the power cable delivered with the buds to charge it.

**Power level indication**
White: The battery level is higher than 30%.
Red: The battery level is lower than 30%.

• If the buds are placed in the case, the indicator will show the battery level of the buds, and ignore the battery level of the case.
• Take the left and right bud out. The indicator will show the battery level of the case.
• For users of Nothing Phone, you can set the widget on the desktop or check the power status of the device in the quick settings of the drop-down notification bar.

54.     Once such connection occurs, charging of the battery in the wireless earbud begins via charging contacts and electrical circuitry located in the base station.

55.     Ear (2) earbuds are configured to perform wired two-way data communication with the charging case, as seen through factory resets, power level indicator feature, and Bluetooth pairing.

Nothing Ear (2) Wireless Earbud Reset

How do I reset Ear (2)?                    ( Read Less )

To reset Ear (2), place the earbuds into the case, open the lid, and press the case button for 10 seconds. After the indicator flashes red three times, Ear (2) is reset.

56.     Ear (2) earbuds are *not* capable of wirelessly communicating with the

mobile base station.

57.     Nothing Technology sells Ear (2) with a mobile base station that includes a connection hole, a user input button, at least one processor, at least one memory, and circuitry.  The Ear (2) system is designed and intended to be used by plugging the earbuds into connection holes of the base station for charging and two-way wired data communication.

**Ear (Stick)**

58.     The Ear (Stick) base station case houses earbuds and consists of a connection hole, characterized by a cavity that holds both earbuds.

Nothing Ear (Stick) Base Station          Nothing Ear (Stick) Integrated Body

 

59.     Each wireless earbud plugs into a connection hole to form an integrated body.  The integrated body is formed when the wireless earbuds are placed into their

respective connection holes, where they are magnetically secured.

60.     In normal operation, the wireless earbuds of the Accused Products communicate with a smartphone via Bluetooth, receive audio data from the smartphone, and play audio using the audio data from the smartphone when paired wirelessly.

61.     The Accused Products feature an earbud connector for connecting with an electrical circuit of the main body for wired data communication.

62.     The main body of the Ear (Stick) comprises at least one processor and at least one memory.

Nothing Ear (Stick) Base Station Circuit and Memory





63.     The Nothing Ear (Stick) features a User Input Button on the case

configured to communicate with the buds and the base station. In response to the pressing of the User Input Button, "at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone such that the wireless earbud receives audio data that originated from the smartphone and plays the audio using the audio data from the smartphone." *See e.g.,* '066 Patent at 33:28-34.

Nothing Ear (Stick) Base Station User Input Button



64.    The User Input Button is used to initiate Bluetooth pairing.

Nothing Ear (Stick) Base Station User Input Button

65.    The Nothing Ear (Stick) wireless earbuds communicate with a

smartphone via Bluetooth.

Nothing (Ear Stick) Wireless Earbud Bluetooth Pairing



BES BES500YA Bluetooth Chip





66.    Audio from the smartphone is played through the earbuds.

67.    The Nothing Ear (Stick) is configured to recognize when the earbuds are placed in the connection hole, where "at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate charging of a battery of the wireless earbud." *See, e.g.,* '066 Patent 33:35-39.

Nothing (Ear Stick) Wireless Earbud Charging



Chipsea CS32F035



Nothing Earbud (Stick) User Manual

**Charge**
**Ear buds**
Put the buds in the charging case and
close the case to charge.

**Ear case**
Close the case and connect the case to a
power supply through the power cable
delivered with the buds to charge it.
If the indicator lamp of the case is
flashing white, the case is charging. If
it is always white, the case is fully
charged.

68.     Once such connection occurs, charging of the battery in the wireless

earbud begins via charging contacts and electrical circuitry located in the base station.

Nothing Ear (Stick) Charging Contacts

Nothing Ear (Stick) Base Station Charging Pin          Nothing Ear (Stick) Earbud Charging Contact




69.     Nothing Ear (Stick) earbuds are configured to perform wired two-way data communication with the charging case and are *not* capable of wirelessly communicating with the mobile base station.



70.     Nothing Technology Limited sells Ear (Stick) earbuds with a mobile base station that includes a connection hole, a user input button, at least one processor, at least one memory, and charging circuitry.  The Ear (Stick) system is designed and intended to be used by plugging the earbuds into connection holes of the base station for charging and two-way wired data communication.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 10,455,066

71.     Pinn incorporates the above paragraphs herein by reference.

72.     The '066 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

73.     As the owner of the '066 Patent, Pinn holds all substantial rights in and to the '066 Patent, including the right to exclude others from practicing its patented inventions, the right to enforce the '066 Patent, and the right to sue and recover damages for infringement of the '066 Patent.

74.     Nothing has no authority or license to practice the inventions claimed in the '066 Patent.

75.     The Accused Products are designed to provide consumers with a product comprising a base station, earbuds, a connection hole, a user input button, and electrical circuitry designed to connect the earbuds to the base station, all of which form an integrated body capable of wirelessly pairing with a smartphone such that the wireless earbud can receive audio data that originated from the smartphone.

76.     Nothing has infringed and continues to infringe one or more claims, including Claim 1 of the '066 Patent by making, using, selling, and/or, offering for sale the Accused Products in the United States, and/or importing the Accused Products into the United States, without authority to do so.

77.     Nothing has infringed and continues to infringe the '066 Patent either directly or through the acts of inducement in violation of 35 U.S.C. § 271.

78.     Since receiving notice of the '066 Patent, Nothing has continued to perform acts of infringement and has taken no steps to modify the Accused Products.

79.     Nothing markets and encourages its users to use numerous variations of its wireless earbuds.

80.     As exemplified in the above paragraphs, the use of one or more of the Accused Products performs a method of connecting a user's smartphone to the wireless earbuds to play sound through the earbuds.

81.     As a result of Nothing's past infringing conduct, Nothing is liable to Pinn in an amount that adequately compensates it for Nothing's infringement, which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

82.     Pinn has been damaged by Nothing's infringement of the '066 Patent.

83.     As a result of Nothing's ongoing infringing conduct described in this Count, Pinn will continue to be damaged unless Nothing is enjoined from further

infringement.

## COUNT II
## <u>INDUCED PATENT INFRINGEMENT OF U.S. PATENT NO 10,455,066</u>

84.     Plaintiff realleges and incorporates the above paragraphs by reference.

85.     Nothing is liable for indirect infringement under 35 U.S.C. § 271(b) of at least Claim 1, of the '066 Patent at least as early as service of the Complaint, because it knowingly encourages, aids, and directs others (e.g., end users and customers) to use and operate the Accused Products in an infringing manner.

86.     At least as of the date of the service of the Complaint, Nothing had knowledge of the '066 Patent and knowledge of its own instructions, encouragement, and directions to its users and customers with respect to use of the Accused Products. Since that time, Nothing specifically intended, and continues to specifically intend, for persons who acquire and use the Accused Products, including Nothing's customers (e.g., individual users, etc.), to use the Accused Products in a manner that infringes the '066 Patent. Nothing encourages others, including their customers, to use the Accused Products in the United States without authority. This is evident when Nothing encourages and instructs customers and other end users in the use and operation of the Accused Products via advertisement, technical material, instructional material, instructional videos, and otherwise.

87.     Nothing specifically intends the Accused Products to be used and operated in a manner that infringes one or more claims, including Claim 1, of the '066

Patent.

88.    Nothing encourages, directs, aids, and abets the use and configuration of the Accused Products.

89.    As detailed above, Nothing has instructed its customers to use the accused methods and Accused Products in an infringing manner.

90.    Nothing's knowledge of the '066 Patent and Plaintiff's infringement allegations against Nothing, combined with its knowledge of the Accused Products and how they are used to infringe the '066 Patent, consistent with Nothing's promotions and instructions, demonstrate Nothing's specific intent to induce its users to infringe the '066 Patent.

91.    Plaintiff is entitled to recover from Nothing compensation in the form of monetary damages suffered as a result of Nothing's infringement in an amount that cannot be less than a reasonably royalty, together with interest and costs as fixed by this Court.

## NOTICE OF REQUIREMENT OF LITIGATION HOLD

92.    Nothing Technology Ltd. is hereby notified that it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Nothing Technology Ltd. knows, or

reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter, "Potential Evidence"). As used above, the phrase "electronically stored information" includes, without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents, resellers, or employees, if Defendant's electronically stored information resides there.

93.     Nothing is hereby further notified and forewarned that any alteration,

destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify its agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1. Judgment that Nothing Technology Ltd. has directly infringed one or more valid claims of the '066 Patent;

2. Judgment that Nothing Technology Ltd. has indirectly infringed one or more valid claims of the '066 Patent;

3. An award of damages adequate to compensate Pinn for Nothing Technology Ltd.'s infringement up to and including the date such judgment is entered, to the full extent damages are available under 35 U.S.C. §§ 154(d), 284, or otherwise, along with prejudgment and post-judgment interest at the highest allowable rates;

4. An award of enhanced and/or treble damages, pursuant to 35 U.S.C. § 284;

5.      Judgment that this case is exceptional, along with a corresponding award of reasonable attorney's fees, pursuant to 35 U.S.C. § 285;

6.      Costs and disbursements, pursuant to Fed. R. Civ. P. 54(d), 28 U.S.C. § 1920, 35 U.S.C. § 284, or as otherwise available;;

7.      An accounting;

8.      A permanent injunction, or, alternatively (if the Court declines to grant injunctive relief), and to the extent calculable, damages adequate to compensate Pinn for Nothing Technology Ltd.'s ongoing or future infringement'

9.      Such other and further relief, whether at law or in equity, as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated:  August 31, 2023                    Respectfully Submitted,

By:

Cabrach J. Connor
State Bar No. 24036390
Email: Cab@CLandS.com
Jennifer Tatum Lee
State Bar No. 24046950
Email: Jennifer@CLandS.com
**CONNOR LEE AND SHUMAKER PLLC**

609 Castle Ridge Road, Suite 450
Austin, Texas 78746
512.777.1254 Telephone
888.387.1134 Facsimile

David A. Skeels
State Bar No. 24041925
Email: DSkeels@whitakerchalk.com
**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce St., Suite 3500
Fort Worth, Texas  76102
817.878.0500 Telephone
817.878.0501 Facsimile

**ATTORNEYS FOR PLAINTIFF**